IN THE UNITED STATES COURT FOR
THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

UNITED STATES OF AMERICA,

    *Plaintiff,*

    v.

SJERP YSSELSTEIN and
MEADOWVALE DAIRY, LLC,

    *Defendants.*

Civil Action No. 5:16-cv-4016-LTS

**CONSENT DECREE**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | JURISDICTION AND VENUE | 3 |
| III. | APPLICABILITY | 4 |
| IV. | DEFINITIONS | 5 |
| V. | COMPLIANCE REQUIREMENTS | 9 |
| VI. | REVIEW AND APPROVAL PROCEDURES | 15 |
| VII. | CIVIL PENALTY | 17 |
| VIII. | STIPULATED PENALTIES | 18 |
| IX. | FORCE MAJEURE | 21 |
| X. | DISPUTE RESOLUTION | 24 |
| XI. | INFORMATION COLLECTION AND RETENTION | 26 |
| XII. | EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS | 28 |
| XIII. | COSTS | 29 |
| XIV. | NOTICES | 30 |
| XV. | EFFECTIVE DATE | 31 |
| XVI. | RETENTION OF JURISDICTION | 31 |
| XVII. | MODIFICATION | 31 |
| XVIII. | TERMINATION | 32 |
| XIX. | PUBLIC PARTICIPATION | 32 |
| XX. | SIGNATORIES/SERVICE | 33 |
| XXI. | INTEGRATION | 33 |
| XXII. | FINAL JUDGMENT | 33 |
| XXIII. | APPENDICES | 34 |

## I.   **INTRODUCTION**

WHEREAS, Plaintiff United States of America, by the authority of the Attorney General of the United States and through its undersigned counsel, acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a Complaint in this action on February 26, 2016 alleging that Sjerp Ysselstein and Meadowvale Dairy, LLC (collectively "Defendants") violated Section 301 of the Clean Water Act ("CWA"), 33 U.S.C. § 1311, and the terms and conditions of two National Pollutant Discharge Elimination System ("NPDES") permits issued under Section 402 of the CWA, 33 U.S.C. § 1342.

WHEREAS, the Complaint sought injunctive relief and civil penalties pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d).

WHEREAS, Defendant Meadowvale Dairy, LLC is a limited liability company formed in the State of Iowa, with a principal place of business in Rock Valley, Iowa.

WHEREAS, Defendant Sjerp Ysselstein owns and operates Meadowvale Dairy, which consists of two permitted concentrated animal feeding operations ("CAFOs") in Rock Valley, Iowa: (1) Meadowvale Dairy – North Site ("Meadowvale North"), located at 1760 300th Street; and (2) Meadowvale Dairy – South Site ("Meadowvale South") located at 1730 310th Street.

WHEREAS, Meadowvale North and Meadowvale South each qualify, and qualified at all times relevant to this action, as "large" CAFOs as that term is defined at 40 C.F.R. § 122.23(b)(4).

WHEREAS, the Iowa Department of Natural Resources ("IDNR") issued NPDES Permit No. IA00077844 (the "North Permit") to Meadowvale North and NPDES Permit No. IA0077852 (the "South Permit") (collectively the "NPDES Permits") to Meadowvale South.

WHEREAS, the Complaint alleges that Defendants violated Section 301 of the CWA, 33 U.S.C § 1311(a) and the NPDES Permits, by: (1) discharging Manure and Process Wastewater

2

into Waters of the United States on at least three Days between June 19, 2014 and July 22, 2014; (2) failing to dewater Settled Open Feedlot Effluent Basins ("SOFEBs") to less than ten (10) percent of storage capacity before winter; and (3) failing to install Depth Markers in all open SOFEBs between August 27, 2013 and September 1, 2014.

WHEREAS, Defendants submitted an individual NPDES Permit application to IDNR on September 4, 2015 to account for an additional 2,550 head of cattle, thereby expanding Meadowvale Dairy's NPDES permit coverage to expressly include the Calf Hut and the Concrete Bunker.

WHEREAS, IDNR approved Defendants' construction permit application (CP-A2015-165), authorizing the construction of a new SOFEB with associated solids settling facilities to increase the storage capacity of Meadowvale South.

WHEREAS, during the settlement negotiations preceding this Consent Decree, Defendants implemented interim runoff controls at Meadowvale North and Meadowvale South to reduce the probability of an unauthorized discharge.

WHEREAS, Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED AND DECREED as follows:

## II.       <u>JURISDICTION AND VENUE</u>

1.       This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and over

the Parties. Venue properly lies in this District pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391 and 1395(a), because it is the judicial district where the Defendants are located and where the alleged violations occurred. For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendants consent to the Court's jurisdiction in any action to enforce this Consent Decree and consent to venue in this judicial district.

### III.   **APPLICABILITY**

2.   The obligations of this Consent Decree apply to and are binding upon the United States and upon the Defendants and their officers, directors, employees, agents, servants, successors, assigns, and all persons, firms, and corporations under contract with the Defendants to perform obligations of this Consent Decree.

3.   Unless EPA otherwise agrees in writing, no transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligation to ensure that the terms of the Consent Decree are implemented, unless: (a) the Plaintiff consents to relieve Defendants of their obligations, and (b) the transferee agrees to undertake the obligations required by this Decree, as they apply to the Facility being transferred, and to be added as a Party under the Decree and thus bound by the terms thereof. At least thirty (30) Days prior to such transfer, Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to the United States in accordance with Section XIV of this Decree (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Consent Decree.

4.     Within thirty (30) Days after the Effective Date of this Consent Decree, the Defendants shall provide a copy of this Consent Decree to all officers, directors, employees, agents, and managers whose duties might reasonably include compliance with any substantive provision of this Consent Decree, as well as to a principal responsible officer or senior management official of any contractor retained to perform substantive work required under this Consent Decree. Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

5.     In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## IV.     DEFINITIONS

6.     Terms used in this Consent Decree that are defined in the CWA or in regulations promulgated pursuant to the CWA shall have the meanings assigned to them in the CWA or such regulations, unless otherwise provided in this Consent Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.  "Complaint" shall mean the Complaint filed by the United States in this action in the Northern District of Iowa on February 26, 2016.

b.  "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto listed in Section XXIII (Appendices).   In the event of a conflict between this Decree and any appendix, this Decree shall control.

c.  "Date of Entry" shall mean the date on which this Consent Decree is entered by the United States District Court for the Northern District of Iowa.

d. "Date of Lodging" shall mean the date on which this Consent Decree is lodged with the United States District Court for the Northern District of Iowa for a period of public comment.

e. "Day" shall mean a calendar Day unless expressly stated to be a business Day. In computing any period of time under this Consent Decree, where the last Day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business on the next business Day.

f. "Deliverable" shall mean any written document required to be prepared and/or submitted by or on behalf of Defendants for purposes of this Consent Decree.

g. "Depth Marker" shall mean a tool designed to monitor liquid levels in lagoons or impoundments, including SOFEBs, EMSBs, and Formed Manure Storage Structures.

h. "Earthen Manure Storage Basins" or "EMSBs" shall mean an earthen cavity, either covered or uncovered, which receives Manure and Process Wastewater discharges from a confinement feeding operation.

i. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

j. "Effective Date" shall have the definition provided in Section XV of the Consent Decree.

k. "Facility" or "Facilities" shall mean one or more of the four component parts of the Meadowvale Dairy in Rock Valley, Iowa including: (i) Meadowvale Dairy – North Site ("Meadowvale North") located at 1760 300th Street that is approximately 135 acres in size and confines approximately 6,750 head of cattle; (ii) Meadowvale Dairy – South Site ("Meadowvale South") located at 1730 310th Street that is

6

approximately 50 acres in size and confines approximately 3,250 head of cattle; (iii) the Calf Hut located to the southwest of Meadowvale South that confines approximately 1,500 head of cattle with one confinement barn used to house immature cattle; and (iv) the Concrete Bunker located to the north of the Calf Hut, separated from Meadowvale South by 310th Street, that stores excess Manure and Process Wastewater.

l. "Freeboard" shall mean the difference in elevation between the designed storage capacity and the overflow level of a lagoon or impoundment.

m. "Formed Manure Storage Structures" shall mean a covered or uncovered impoundment used to store Manure or Process Wastewater from an animal feeding operation, which has walls and a floor constructed of concrete, concrete block, wood, steel, or similar materials.

n. "IDNR" shall mean the Iowa Department of Natural Resources and any of its successor departments or agencies.

o. "Land Application Area" shall mean land under the control of Defendants, whether owned, rented, or leased, to which Manure, litter or Process Wastewater from the Facility is or may be applied in accordance with and as described in the Nutrient Management Plan.

p. "Manure" shall include solids, bedding, compost and raw materials or other materials commingled with Manure or set aside for disposal.

q. "NPDES" shall mean the National Pollutant Discharge Elimination System authorized under Section 402 of the CWA, 33 U.S.C. § 1342.

r. "NPDES Permits" shall mean the NPDES permits issued by IDNR to Meadowvale North (Permit No. IA0077844) and Meadowvale South (Permit No. IA0077852) in

effect on the Date of Lodging, and any future extended, modified, or reissued NPDES permit.

s.  "Nutrient Management Plan" or "NMP " shall mean a plan incorporated into the NPDES permits which provides for the management of Manure, Process Wastewater, settled open feedlot effluent, settleable solids, and open feedlot effluent, including the land application of effluent.

t.  "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or letter.

u.  "Parties" shall mean the United States of America on behalf of EPA, and the Defendants, Meadowvale Dairy, LLC and Sjerp Ysselstein.

v.  "Plaintiffs" shall mean the United States of America on behalf of EPA.

w.  "Process Wastewater" shall mean water directly or indirectly used in the operation of a CAFO for any of the following: spillage or overflow from animal or poultry watering systems; washing, cleaning, or flushing pens, barns, Manure pits, or other CAFO facilities; direct contact swimming, washing, or spray cooling of animals; or dust control. Process Wastewater also includes any water which comes into contact with any raw materials, products, or byproducts including Manure, litter, feed, milk, eggs, or bedding.

x.  "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

y.  "Settled Open Feedlot Effluent Basin" or "SOFEB" shall mean a covered or uncovered impoundment or lagoon that collects and stores open lot effluent.

z.  "Solids Settling Basin" or "SSB" shall mean a basin or other structure designed and operated to remove settleable solids from open feedlot effluent.

8

aa. "United States" shall mean the United States of America, acting on behalf of EPA, including its departments, agencies and instrumentalities.

## V.   **COMPLIANCE REQUIREMENTS**

A. Short-term Remedial Measures

7.    NPDES Permit Compliance.   The Defendants shall immediately comply with all requirements of the NPDES permits, including the Nutrient Management Plan incorporated by reference therein.

8.    Identification of a Consultant.   The United States has determined that ProAg Engineering, Inc. is qualified to design and oversee the implementation of the remedial measures required under this Section.

9.    If the Defendants elect to use another firm to implement the remedial measures during the pendency of this Consent Decree, they shall notify EPA in writing at least thirty (30) Days prior to engaging the new firm.   The notice shall identify a new Consultant qualified to design and oversee the implementation of the remedial measures required under this Consent Decree.   The identified Consultant shall be a professional engineer licensed in the State of Iowa. The notification shall include the name, address, phone number, electronic mail address and qualifications of the Consultant.

10.    Upon receipt of the Notice required in Paragraph 9, EPA will evaluate Defendants' proposed Consultant pursuant to EPA's review and approval authority outlined in Section VI (Review and Approval Procedures).

11.    All persons under the direction and supervision of Defendants' Consultant must possess all necessary professional licenses required by federal and state law.

12.    Depth Markers.   Within thirty (30) Days of the Effective Date of this Consent Decree, Defendants shall install Depth Markers in all SOFEBs, EMSBs, and Formed Manure

Storage Structures at the Facility and provide documentation, including color photographs, of the installation to EPA and IDNR as provided in Section XIV (Notices).

13. The Depth Markers shall accurately measure liquid levels in increments of one foot or less. In the Notice required by Paragraph 12, Defendants shall certify that all Depth Markers are installed properly and all critical levels have been checked and certified by a professional engineer.

14. The Depth Markers shall be maintained and clearly marked with the following levels as applicable under federal and state law, and the regulations promulgated pursuant thereto: (a) the freeboard level indicating the elevation difference between the designed full depth and the overflow depth; (b) the must pump level, indicating the minimum capacity necessary to contain all Manure, Process Wastewater and direct precipitation from a 25-year, 24-hour rainfall event; (c) the 90% of must pump level, indicating the level at which storage capacity is 90% of that required to contain all Manure, Process Wastewater and direct precipitation from a 25-year, 24-hour rainfall event; and (d) the empty level, indicating that Manure and Process Wastewater occupy less than ten (10) percent of storage capacity.

15. <u>Monitoring and Recordkeeping</u>. Within thirty (30) Days of the Effective Date of this Consent Decree, Defendants shall revise their monitoring and recordkeeping forms as specified below and provide copies of the revised forms to EPA and IDNR as provided in Section XIV (Notices).

      a. <u>Monitoring Forms</u>. The monitoring forms shall be revised to: (i) include must pump, freeboard, and empty levels for all SOFEBs, EMSBs, and Formed Manure Storage Structures that pump Process Wastewater; (ii) record any event that changes liquid levels including, but not limited to, precipitation events, transfer operations, and land application; (iii) clearly identify the subject SOFEB, EMSB,

or Formed Manure Storage Structure; and (iv) include the quantity of Process Wastewater pumped and the receiving land application field.

b.  Maintenance Inspection Logs.  The maintenance inspection logs shall be revised to require a description of: (i) the condition of all SOFEBs, EMSBs, and Formed Manure Storage Structures; (ii) the condition of all Depth Markers; and (iii) a description of all transfer pump screens to ensure that all pump screens are free from debris.

c.  Discharge Forms. Defendants shall develop and maintain forms to record information on discharges and releases from either the land application areas or the production areas, including the Concrete Bunker and the Calf Hut, consistent with the requirements of the NPDES permits.

B. Long-term Remedial Measures

16.  Long-term Work Plan.  Within 180 Days of the Effective Date of this Consent Decree, Defendants shall submit a Work Plan designed to maintain compliance with the NPDES permits and the CWA, and to ensure that the Manure control systems at the Facility are designed, constructed, operated, and maintained to contain all Manure, Process Wastewater, and precipitation from a 25-year, 24-hour rainfall event.  The Work Plan shall be subject to EPA's review and approval authority as outlined in Section VI (Review and Approval Procedures).  The Work Plan shall include the following components:

a.  Storage Capacity Assessment.  Defendants shall calculate the current available storage capacity in all SSBs, SOFEBs, and EMSBs, and compare it against the storage capacity as designed.  Based on the results of the Storage Capacity Assessment, Defendants shall prepare a work plan and an accompanying implementation timeline for the cleanout and maintenance of all SSBs, SOFEBs,

and EMSBs to ensure compliance with the NPDES permits and the Nutrient Management Plan.

b. <u>Dewatering Assessment</u>.   The Defendants shall evaluate the Facility's ability to dewater all SOFEBs and EMSBs to either Must Pump or empty level, as applicable under the NPDES Permits, within ten (10) Days.   Based on the results of the Dewatering Assessment, Defendants shall prepare a work plan with an accompanying implementation timeline designed to ensure that all SOFEBs and EMSBs can be emptied within ten (10) Days to meet the dewatering requirements contained in the NPDES Permits.

c. <u>Production Area Assessment</u>.   The Defendants shall conduct a comprehensive Assessment of all production areas to identify any areas that could result in an unauthorized discharge of Manure, litter, or Process Wastewater in violation of the NPDES permits.   At a minimum, this assessment must address the areas identified in Appendix A (Production Area Assessment Identified Areas) to this Consent Decree.   Based on the results of the Production Area Assessment, Defendants shall prepare a plan with an accompanying implementation timeline designed to ensure compliance with the NPDES permits.

d. <u>Land Application Assessment</u>.   The Defendants shall conduct a comprehensive assessment of all land application fields to ensure that the land application of Manure, litter, or Process Wastewater meets all setback requirements required in the Nutrient Management Plan and to ensure that no dry weather discharges occur. Based on the results of the Land Application Assessment, Defendants shall prepare a plan with an accompanying implementation timeline designed to ensure compliance with the NPDES permits and the Nutrient Management Plan.

e.  Contingency Plan.  The Defendants shall prepare a Contingency Plan designed to (i) prevent lift stations that receive precipitation-induced runoff from discharging due to adverse conditions including, but not limited to, electrical outage, pump failure, and plugged screens; (ii) ensure that center pivots are shut off near erosional features, road ditches or any other potential conveyances to Waters of the United States; and (iii) prevent discharges or releases from irrigation lines/pivots from adverse conditions including pressure loss and stalled pivots.

17.  Once approved by EPA, the Long-term Work Plan shall be incorporated by reference and fully enforceable under the terms of this Consent Decree.  All corrective actions identified in the Long-term Work Plan shall be completed within two years of EPA's approval.

C.  Reporting Requirements

18.  Quarterly Reports.  Beginning quarterly, within three (3) months of the Effective Date of this Consent Decree, and continuing until Defendants submit the Completion Report, Defendants shall submit Quarterly Reports.  Quarterly Reports for the period January to March shall be due on April 7, with subsequent reports due on July 7, October 7, and January 7.  Each Quarterly Report shall contain a summary of the progress since the previous Quarterly Report, and current status of all projects, work plans, and assessments set forth in Section V (Compliance Requirements).  This summary will include, but is not limited to:

a.  A description of completed activities, including assessments, construction, or related activities since the previous Quarterly Report associated with the remedial measures set forth in Section V (Compliance Requirements), including the Short-term remedial measures, the Long-term Work Plan, Storage Capacity Assessment, Dewatering Assessment, Production Area Assessment, Land Application Assessment, and the Contingency Plan.

13

b. A summary of any planned activities, including assessments, construction, or related activities to occur in the time period before the next Quarterly Report.

c. The anticipated completion date for each of the remedial measures set forth in Section V (Compliance Requirements) including the Short-term remedial measures, Long-term Work Plan, Storage Capacity Assessment, Dewatering Assessment, Production Area Assessment, Land Application Assessment, and the Contingency Plan.

d. A description of any conditions or problems the Defendants anticipate may delay completion of the remedial measures set forth in Section V (Compliance Requirements) and the measures planned to address the identified problems.

19. <u>Completion Report</u>. Within 30 Days of completion of the work identified in the Long-term Work Plan, Defendants shall submit a Completion Report that shall include all reports, photographic evidence, and copies of relevant documents demonstrating completion of the remedial measures set forth in the Long-term Work Plan. The Completion Report shall include: (i) current "as-built" drawings depicting all SOFEBs, SSBs, EMSBs, Formed Manure Storage Structures, underground piping, and lift stations at the Facility; and (ii) a single map showing all center pivot irrigation units. The Completion Report shall be subject to EPA's review and approval authority as outlined in Section VI (Review and Approval).

20. <u>Independent Third Party Compliance Verification</u>. Pursuant to the terms outlined in Appendix B (Independent Third Party Compliance Verification Procedure) Defendants shall retain an independent third party compliance Verifier who shall conduct a compliance verification at Defendants' Facilities and report its findings to Defendants and EPA.

21. All Deliverables, including the Long-term Work Plan, Completion Report, and Quarterly Reports, required under this Section shall be submitted to EPA and IDNR as provided

in Section XIV (Notices). All Deliverables required under this Consent Decree shall be submitted electronically in a digital format that is searchable, where available, provided that the total size of attachments to each email not exceed 10 MB.

22. <u>Certification</u>. Each Deliverable made by Defendants under this Section shall be signed by an official of the submitting party and shall include the following certification:

> *I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.*

However, this certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

23. The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the CWA or implementing regulations, or by any other federal, State, or local law, regulation, permit, or other requirement.

24. Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law. The Defendants shall not object to the admissibility into evidence of any report, work plan, notice or other document prepared in accordance with this Consent Decree or the information contained in said reports in any proceeding to enforce this Consent Decree.

## VI. REVIEW AND APPROVAL PROCEDURES

25. After review of any work plan, assessment, report, or other item that is required to be submitted for approval pursuant to this Consent Decree, EPA shall in writing:

a. Approve the submission upon specified conditions;

b. Approve part of the submission and disapprove the remainder; or

c. Disapprove the submission.

26.    If the submission is approved, Defendants shall take all actions required by the work plan, assessment, report, or other item, in accordance with the schedules and requirements of the work plan, assessment, report, or other document, as approved.   If the submission is conditionally approved or approved only in part, Defendants shall, upon written direction from EPA, take all actions required by the approved work plan, assessment, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendants' right to dispute only the specified conditions or the disapproved portions, under Section X (Dispute Resolution).

27.    If the submission is disapproved in whole or in part, Defendants shall, within forty-five (45) Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the work plan, assessment, report, or other item or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.   If the resubmission is approved in whole or in part, Defendants shall proceed in accordance with the preceding Paragraph.

28.    Any stipulated penalties applicable to the original submission, as provided in Section VIII (Stipulated Penalties), shall accrue during the forty-five (45) Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendants' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

29.    If a resubmitted work plan, assessment, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendants to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to

Defendants' right to invoke Dispute Resolution and the right of the EPA to seek stipulated penalties as provided in the preceding Paragraphs.

30.     All work plans, assessments, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree.   In the event EPA approves or modifies a portion of a plan, report or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

VII.     **CIVIL PENALTY**

31.     Within thirty (30) Days of the Effective Date of this Consent Decree, Defendants shall pay the sum of $160,000 as a civil penalty, together with interest accruing from October 20, 2016, at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging.   Defendants shall pay the civil penalty due at https://www.pay.gov to the U.S. Department of Justice account in accordance with written instructions to be provided to Defendants by the Financial Litigation Unit ("FLU") of the U.S. Attorney's Office for the Northern District of Iowa.   The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which the Defendants shall use to identify all payments required to be made in accordance with this Consent Decree.   At the time of payment, Defendants shall send notice that payment has been made to: (a) EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail to EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (b) the United States via email or regular mail in accordance with Section XIV (Notices); and (c) EPA in accordance with Section XIV (Notices).   Such notice shall state that the payment is for the civil penalty owed pursuant to this Consent Decree in United States v. Sjerp Ysselstein and Meadowvale Dairy, LLC, and shall reference the CDCS Number and the DOJ case number: 90-5-1-1-11243.

32.     In the event that full cash payment to the United States is not made by the due date, Defendants shall also pay to the United States interest on the balance due from the original due date through the date of payment, at the rate calculated pursuant to 28 U.S.C. § 1961.

33.     Defendants shall not deduct the civil penalty paid under this Consent Decree in calculating its federal income tax.

## VIII.     **STIPULATED PENALTIES**

34.     Defendants shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Consent Decree including any work plan, assessment, or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

35.     <u>Late Payment of Civil Penalty</u>. If the Defendants fail to pay the civil penalty required by Section VII (Civil Penalty) when due, the Defendants shall pay a stipulated penalty of $10,000 per Day for each Day that the payment is late.

36.     <u>Failure to Provide a Copy of Consent Decree</u>. If the Defendants fail to provide a copy of this Consent Decree to any proposed transferee or to provide written notice to the United States of the prospective transfer as required by Section III (Applicability) of this Consent Decree, the Defendants shall pay a stipulated penalty of $5,000 per occurrence.

37.     <u>Failure to Permit Entry</u>. If Defendants fail to permit EPA or its authorized representatives or contractors to enter the Facility as required by Section XI (Information Collection and Retention) of this Consent Decree, the Defendants shall pay a stipulated penalty of $1,000 per Day per violation.

38. <u>Failure to Submit Timely and Complete Documents</u>. Defendants shall pay stipulated penalties, as set forth below, for each Day they fail to submit a timely or complete report, Work Plan, assessment, or other Deliverable required under this Consent Decree. "Timely" shall mean the Work Plan, assessment, report or Deliverable is submitted by the date specified in this Consent Decree, including appendices, and "complete" shall mean that the Work Plan, report, or submittal includes all of the elements required as set forth in this Consent Decree, including appendices.

| Period of Noncompliance | Penalty per Violation per Day |
|---|---|
| First 21 Days | $250 |
| Next 21 Days | $500 |
| More than 42 Days | $1,000 |

39. <u>Failure to Comply with the EPA-Approved Long-term Work Plan</u>. Defendants shall pay stipulated penalties, as set forth below, for each Day they fail to (i) complete the remedial measures in the EPA-approved Long-term Work Plan or; (ii) timely comply with any schedule set forth in the EPA-approved Long-term Work Plan.

| Period of Noncompliance | Penalty per Violation per Day |
|---|---|
| First 21 Days | $500 |
| Next 21 Days | $1,000 |
| More than 42 Days | $2,000 |

40. <u>Failure to Comply with the NPDES Permits</u>. Defendants shall pay stipulated penalties, as set forth below, for each Day they fail to comply with the terms and conditions contained in the NPDES permits.

| Period of Noncompliance | Penalty per Violation per Day |
|---|---|
| First 21 Days | $500 |
| Next 21 Days | $1,000 |
| More than 42 Days | $2,000 |

41. <u>Failure to Prevent an Unauthorized Discharge</u>. In the event of a discharge of Manure or Process Wastewater from the Facility into Waters of the U.S. in violation of the NPDES permits, the Defendants shall pay a stipulated penalty of $10,000 per occurrence.

42. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

43. Defendants shall pay stipulated penalties to the United States within thirty (30) Days of receiving the United States' written demand.

44. The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to the United States under this Consent Decree.

45. Stipulated penalties shall continue to accrue as provided in Paragraph 42 during any Dispute Resolution, but need not be paid until the following:

 a. If the dispute is resolved by agreement or by a decision of EPA, and is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, within thirty (30) Days of the Effective Date of the agreement or the receipt of EPA's decision or order.

 b. If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

 c. If either Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

20

46.     Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Section VII (Civil Penalty), except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

47.     Defendants shall not deduct the stipulated penalties paid under this Consent Decree in calculating its federal income tax.

48.     If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.   Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

49.     The payment of penalties and interest, if any, shall not alter in any way the Defendants' obligation to complete performance of this Consent Decree.

50.     Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendants' violation of this Consent Decree or applicable law.   Defendants reserve all rights to contest any such additional actions taken by the United States against the Defendants.

51.     Where a violation of this Consent Decree is also a violation of the CWA, Defendants shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## IX.     **FORCE MAJEURE**

52.     "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or

of Defendants' contractors, which delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree, unanticipated or increased expenses or costs associated with implementation of this Consent Decree, changed financial circumstances, or other financial or budgetary issues.

53.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendants shall provide notice orally or by electronic transmission to EPA as soon as possible but not later than seventy-two (72) hours of when Defendants first knew that the event might cause a delay. Within seven (7) Days thereafter, Defendants shall provide in writing to EPA, in accordance with Section XIV (Notices), an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a Force Majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be

deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

54.    If EPA agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA for such time as is necessary to complete those obligations.    An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation.    EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

55.    If EPA does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify Defendants in writing of its decision.    The EPA's decision shall be binding unless the Defendants timely invoke the dispute resolution procedures set forth in Section X (Dispute Resolution) of this Consent Decree.

56.    If Defendants elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), they shall do so no later than fifteen (15) Days after receipt of EPA's notice.    In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 52.    If Defendants carry this burden, the delay at issue shall be deemed not to be a violation of the affected obligation of this Consent Decree identified to EPA and the Court.

## X.    DISPUTE RESOLUTION

57.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.   Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Decree.

58.    Informal Dispute Resolution.   Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.   The dispute shall be considered to have arisen when Defendants send the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.   The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement between the United States and the Defendants.   If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within thirty (30) Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

59.    Formal Dispute Resolution.   Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.   The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

60.    The United States shall serve its Statement of Position within forty-five (45) Days of receipt of Defendants' Statement of Position.   The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.   The United States'

24

Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

61.    Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV (Notices), a motion requesting judicial resolution of the dispute.   The motion must be filed within twenty (20) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.   The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.   The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court.   Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

62.    Except as otherwise provided in this Consent Decree, the Defendants shall bear the burden of proving that their actions were in compliance with this Consent Decree; or, if the dispute concerns the interpretation of this Consent Decree, the Defendants shall bear the burden of demonstrating that their position complies with this Decree.

63.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.   Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 45.   If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. **INFORMATION COLLECTION AND RETENTION**

64. The United States and its representatives, including attorneys and authorized contractors, and their representatives, shall have the right of immediate entry into any Facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

    a. Monitor the progress of activities required under this Consent Decree;

    b. Verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

    c. Obtain samples and, upon request, splits of any samples taken by Defendants or its representatives, contractors, or Consultants;

    d. Obtain documentary evidence, including photographs and similar data; and

    e. Assess Defendants' compliance with this Consent Decree.

65. Any persons conducting inspections of the Facilities shall comply with the bio-security procedures then in effect at the Facilities and which are generally applicable to personnel accessing the Facilities, and shall further follow the relevant provisions of EPA's *Biosecurity Procedures for Visits to Livestock and Poultry Facilities*, issued April 19, 2016, and any revisions or updates thereto.

66. Until five years after the termination of this Consent Decree, the Defendants shall retain, and shall instruct its contractors and agents to preserve, copies of any reports, plans, permits, and documents submitted to the United States pursuant to this Consent Decree, as well as any underlying research and data used to develop such submittals (hereinafter referred to as "Records"). This information-retention requirement applies regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the State, the Defendants shall provide copies of any Records

required to be maintained under this Paragraph. Defendants may comply with its document retention obligations in this Consent Decree by maintaining its records solely in electronic format.

67. At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States at least sixty (60) Days prior to the destruction of any Records subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendants shall deliver any such documents, records, or other information to EPA. Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendants assert such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendants. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

68. Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

69. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal laws, regulations, or permits.

## XII.    **EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS**

70.    This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging.

71.    The United States reserves all rights against the Defendants with respect to any violations by the Defendants that occur after the Date of Lodging, and/or for any violations of the CWA or applicable state law not specifically alleged in the Complaint, whether they occurred before or after the Date of Lodging.

72.    The United States further reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CWA, its implementing regulations, or under other federal or State laws, regulations, or permit conditions, except as expressly specified in this Consent Decree.   The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendants' Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

73.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facilities or Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 70.

74.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.   Defendants are responsible for achieving and

28

maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA or with any other provisions of federal, State, or local laws, regulations, or permits. Notwithstanding EPA's review or approval of any plans, reports, policies or procedures developed pursuant to or as a result of this Consent Decree, the Defendants shall remain solely responsible for any non-compliance with the terms of this Consent Decree, all applicable permits, as well as all federal and state law and regulations promulgated under those laws.

75.     This Consent Decree does not limit or affect the rights of the Parties to this Consent Decree against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

76.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

XIII.     <u>COSTS</u>

77.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XIV. **NOTICES**

78.    Unless otherwise specified in this Consent Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

to the United States by email:    eescasemanagement.enrd@usdoj.gov
                                  Re: DJ # 90-5-1-1-11243


to the United States by mail:    EES Case Management Unit
                                 Environment and Natural Resources Division
                                 U.S. Department of Justice
                                 P .O. Box 7611
                                 Washington, D.C. 20044-7611
                                 Re: DJ # 90-5-1-1-11243

to EPA:                          Chief, Water Enforcement Branch
                                 Water, Wetlands, and Pesticides Division
                                 U.S. Environmental Protection Agency, Region 7
                                 11201 Renner Blvd.
                                 Lenexa, Kansas 66219

                                 Chris Muehlberger
                                 Office of Regional Counsel
                                 U.S. Environmental Protection Agency, Region 7
                                 11201 Renner Blvd.
                                 Lenexa, Kansas 66219

to IDNR:                         Ken Hessenius
                                 Iowa Department of Natural Resources
                                 1900 North Grand Avenue, Ste. E17
                                 Spencer, Iowa 51301

to Defendants:                   Douglas A. Fulton
                                 Eldon McAfee
                                 Brick Gentry P.C.
                                 6701 Westown Parkway, Suite 100
                                 West Des Moines, IA 50266-7703

79.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

80.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.     **EFFECTIVE DATE**

81.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVI.     **RETENTION OF JURISDICTION**

82.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Section X (Dispute Resolution) and Section XVII (Modification), or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVII.     **MODIFICATION**

83.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.   Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.   The Parties may by mutual agreement determine whether a modification is non-material.   Non-material changes to this Consent Decree (including Appendices) shall be made by written agreement of the Parties without Court approval.

84.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 62, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII.   **TERMINATION**

85.    After Defendants have completed the requirements of Section V (Compliance Requirements) and have complied with all other requirements of this Consent Decree, and have paid the civil penalties and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

86.    Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.   If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

87.    If the United States does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section X of this Decree.   However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until 120 Days after service of its Request for Termination.   This Consent Decree shall remain in effect pending resolution of the dispute by the Parties or the Court in accordance with the provisions of Section X (Dispute Resolution).

## XIX.    **PUBLIC PARTICIPATION**

88.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.   The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.   The Defendants consent to entry of this Consent Decree, in its current form, without further notice and agree not to withdraw from or oppose entry of this Consent Decree

by the Court or to challenge any provision of the Consent Decree, unless the United States has notified the Parties in writing that it no longer supports entry of the Consent Decree.

## XX.    SIGNATORIES/SERVICE

89.    Each undersigned representative of Defendants, EPA and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

90.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.   Defendants agree to accept service of process by email and/or mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI.    INTEGRATION

91.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.   Other than the Appendices, which are attached to and incorporated in this Consent Decree, and Deliverables that are subsequently submitted and approved pursuant to this Consent Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XXII.    FINAL JUDGMENT

92.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and the Defendants.   The

Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXIII.   **APPENDICES**

93.     The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is the Production Area Assessment Identified Areas.

"Appendix B" is the Third Party Compliance Verification Procedure.

Dated and entered this ___27th___ Day of __April_____, 2017.

_____
Honorable Judge Leonard T. Strand
United States District Court Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America v. *Sjerp Ysselstein and Meadowvale Dairy, LLC.*

For Plaintiff UNITED STATES OF AMERICA:


1/17/2017
Date

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


1/17/17
Date

ZACHARY N. MOOR
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America v. *Sjerp Ysselstein and Meadowvale Dairy, LLC.*

For Plaintiff UNITED STATES OF AMERICA (Continued):


KEVIN W. TECHAU
United States Attorney
Northern District of Iowa


*1/11/17*
_____
Date

*Timothy L. Vavricek*
_____
TIMOTHY L. VAVRICEK
Assistant United States Attorney
United States Attorney's Office
Northern District of Iowa
111 Seventh Avenue SE
Cedar Rapids, Iowa 52401

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America v. *Sjerp Ysselstein and Meadowvale Dairy, LLC.*

For Plaintiff UNITED STATES OF AMERICA (Continued):


Date 1/4/17

DAVID COZAD
Regional Counsel
U.S. Environmental Protection Agency
Region 7
11201 Renner Boulevard
Lenexa, Kansas 66219


Date 1.4.17

CHRIS MUEHLBERGER
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 7
11201 Renner Boulevard
Lenexa, Kansas 66219

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America v. *Sjerp Ysselstein and Meadowvale Dairy, LLC.*

For Plaintiff UNITED STATES OF AMERICA (Continued):


12.19-16
_____
Date

_____
MARK POLLINS
Division Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460


12/15/16
_____
Date

_____
KRISTIN BUTERBAUGH
Attorney-Adviser
Water Enforcement Division
Office of Civil Enforcement
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America v. *Sjerp Ysselstein and Meadowvale Dairy, LLC.*

For Defendants SJERP YSSELSTEIN AND MEADOWVALE DAIRY, LLC:

_____
Date

_____
SJERP YSSELSTEIN
Vice-President - Operations
1724 290th Street
Rock Valley, Iowa 51247

# APPENDIX A

# Meadowvale Dairy North Site



1760 300th St
Rock Valley, IA

Service Layer Credits: Source: Esri, DigitalGlobe, GeoEye, Earthstar Geographics, CNES/Airbus DS,
USDA, USGS, AEX, Getmapping, Aerogrid, IGN, IGP, swisstopo, and the GIS User Community

0   0.05   0.1
Miles

 Areas of Concern



NOTE: The Environmental Protection
Agency does not guarantee the
accuracy, completeness, or
timeliness of the information
shown, and shall not be liable
for any injury or loss resulting from
reliance upon the information shown.

HM 11/22/2016

# Meadowvale Dairy South Site



 Areas of Concern



NOTE: The environmental Protection
Agency does not guarantee the
accuracy, completeness, or
timeliness of the information
shown, and shall not be liable
for any injury or loss resulting from
reliance upon the information shown.

HM 11/22/2016

# APPENDIX B

1. The requirements of this Appendix shall be incorporated by reference and fully enforceable under the terms of the Consent Decree entered in the matter of *United States v. Meadowvale Dairy, LLC and Sjerp Ysselstein,* Civil No. 5:16-cv-4016-LTS.

2. Defendants shall retain, at their expense, an independent third party verifier ("Verifier") to conduct a comprehensive verification of Defendants' compliance with the requirements of this Consent Decree set forth in Section V (Compliance Requirements). Defendants shall require that the Verifier act independently and objectively when performing all activities related to assessing Defendants' compliance with this Consent Decree. Defendants shall provide the Verifier with full access to the Facility, and provide or otherwise make available any necessary personnel, documents, and Facility health and safety training to fully perform all verification activities.

3. Selection of a Third Party Verifier. Within six (6) months of the Effective Date of the Consent Decree, the Defendants shall submit to EPA the name and qualifications of a proposed Verifier that meets the following criteria:

   a. The proposed Verifier has demonstrated knowledge and expertise in Concentrated Animal Feeding Operation ("CAFO") design, NPDES permit compliance, Nutrient Management Plan development and implementation, and knowledge of the operation and maintenance of a dairy CAFO.

   b. The proposed Verifier has not conducted research, development, design, construction, financial, engineering, consulting or performed other advisory services for the Defendants within the last three (3) years. However, if the proposed Verifier employs personnel who, before working for the Verifier, conducted research, development, design, construction, or consulting services for the Defendants (as an employee or contractor) it may still meet the independence requirements by ensuring such personnel do not participate on, manage, or advise the verification team.

   c. The proposed Verifier was not involved in the development or construction of runoff controls at the Facility and has not provided any counseling or consulting services to the Defendants concerning compliance with the CWA or the NPDES Permits.

   d. The proposed Verifier will not provide any other research, development, design, construction, financial, engineering, consulting or other advisory services, including voluntary services, to the Defendants for a period of at least three (3) years following the submittal of the final Verification Report.

   e. The Defendants will not provide future employment to any of the proposed Verifier's personnel who managed, conducted, or otherwise participated in the Verification for a period of at least three (3) years following the submittal of the final Verification Report.

   f. In the event that the proposed Verifier does not employ a professional engineer,

it shall either retain a professional engineer or subcontract with an engineering firm to perform its verification obligations. Specifically, a professional engineer must review and approve those portions of the Verification Report that evaluate the installation and maintenance of Depth Markers, and Defendants' compliance with the Remedial Measures required by the Dewatering Assessment and the Storage Capacity Assessment.

4.  In addition to the name and credentials of the proposed Verifier, the Defendants shall also provide EPA with written confirmation that the proposed Verifier meets the criteria contained in Paragraphs 2 & 3 above. The written confirmation must include a certification, as outlined in Paragraph 22 of the Consent Decree, from an authorized representative of both the proposed Verifier and the Defendants.

5.  EPA Approval of Proposed Verifier. Any proposed Verifier is subject to EPA's review and approval authority as outlined in Section VI (Review and Approval Procedures) of the Consent Decree.

    a.  Following the submission of a proposed Verifier, EPA will notify the Defendants in writing whether it approves of the proposed Verifier.

    b.  Within ten (10) Days of EPA approval, Defendants shall retain the approved Verifier to perform verification of the activities set forth in Section V (Compliance Requirements) of the Consent Decree.

    c.  If EPA rejects the proposed Verifier, within thirty (30) Days of receipt of EPA's notification, Defendants shall submit to EPA for approval another proposed Verifier that meets the qualifications set forth in Paragraphs 2 and 3 above. EPA will review the proposed replacement in accordance with the preceding paragraphs.

    d.  Failure by the Parties to reach an agreement on a third party Verifier shall not constitute a Force Majeure event as defined in Section IX of the Consent Decree.

    e.  Nothing in this Appendix precludes the United States from assessing stipulated penalties for missed deadlines associated with the need to select or replace a Verifier unless Defendants successfully assert that the inability of the Verifier to perform the verification activities as required was a Force Majeure event as defined in Section IX of the Consent Decree.

6.  Verifier Obligations. The Defendants shall ensure that their contract with the Verifier explicitly requires the Verifier to perform the following activities that EPA will review to assess the Defendants' compliance with the Consent Decree:

    a.  Confirmation that Defendants have implemented all Short-term Remedial Measures required by Section V (Compliance Requirements) of the Consent Decree, including: (i) the ongoing retention of a consultant to oversee the

implementation of the Consent Decree; (ii) the installation and maintenance of Depth Markers that clearly mark critical levels; and (iii) the required changes to the Monitoring Forms, Maintenance Inspection Logs, and Discharge Forms.

    b.  Confirmation that Defendants have timely implemented the Remedial Measures identified in the EPA-approved Long-term Work Plan, including those Remedial Measures identified in the Storage Capacity Assessment, Dewatering Assessment, Production Area Assessment, Land Application Assessment, and the Contingency Plan.

    c.  Confirmation that all SOFEBs, SSBs, EMSBs and Formed Manure Storage Structures are dewatered as least once annually or in compliance the NPDES Permits.

    d.  Confirmation that all Production Areas have runoff controls sufficient to prevent any discharge or release of Manure or Process Wastewater into Waters of the United States except as authorized by the NPDES permits.

    e.  Inspection of all land application sites to ensure compliance with the setback requirements in the Nutrient Management Plan.

    f.  Audit Defendants' Nutrient Management Plan records and land application records to ensure that all Manure, litter, and Process Wastewater generated from all the Facilities is accounted for.

7.  <u>Annual Verification Reports</u>.  Within twelve (12) months of the approval of the Completion Report, as identified in Paragraph 19 of the CD, the Verifier shall submit the first annual verification report ("Verification Report") to EPA, IDNR, and Defendants as specified in Section XIV (Notices) of the Consent Decree.  The second Verification Report shall be due twelve (12) months from the submission date of the first annual Verification Report.  Both Verification Reports must meet the following requirements:

    a.  The Defendants shall ensure that the Verifier does not share any draft or preliminary audit findings or reports with the Defendants in any format (electronic, paper, or verbal).

    b.  The Verifier shall conduct no post-audit oral or written communications with the Defendants except to request additional verification-related data or information.

    c.  The Defendants shall ensure that the Verifier does not share its audit conclusions with the Defendants until the Verifier submits its Verification Report to EPA.

    d.  The Verification Report shall include all findings, conclusions, monitoring results and other observations of the Verifier.

    e.  The Verifier shall provide copies of all documents reviewed and identify all Facility personnel interviewed in support of the Verification Report.  The Defendants shall require the Verifier to include in the final Verification Report submitted to EPA and IDNR a certification that the Verifier has remained in compliance with all of the conditions set forth in Paragraphs 2 and 3 above, and

will continue to follow such until three (3) years after the final Verification Report is completed.

    e.   The Verification Report, or any information developed or findings of the Verifier, shall not be subject to any privilege or protection.

8.  Within thirty (30) Days of receipt of the Verification Report, the Defendants shall submit to EPA a response to all findings, conclusions and observations set forth in the Verification Report, with a schedule for correction. The Defendants shall also describe each completed or proposed action to correct each deficiency identified in the Verification Report submitted to EPA, including the date(s) that such corrections occurred or are scheduled to occur. The response to the Verification Report shall be submitted to EPA as specified in Section XIV (Notices) of the Consent Decree.

9.  The United States may rely solely on the final Verification Report to determine Defendants' compliance with the Consent Decree. However, the United States shall not be bound by the Verification Report. If EPA determines that the Defendants are in violation of any requirement of the Consent Decree, Defendants shall be liable for stipulated penalties, pursuant to Section VIII, regardless of the Verification Report.